S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**SCOTT ERIK ASPHAUG, OSB #83367**
Assistant United States Attorney
Scott.Asphaug@usdoj.gov
1000 S.W. Third Ave., Suite 600
Portland, OR  97204-2902
Telephone:  (503) 727-1000
Facsimile:  (503) 717-1117
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 3:11-CR-00452-HA |
| v. | GOVERNMENT'S SENTENCING MEMORANDUM |
| **HUI WANG a.k.a. JUDY WANG,** | Sentencing Hearing:  June 17, 2013 at 10:00am |
| **Defendant.** | |

The United States of America, by and through S. Amanda Marshall, United States Attorney for the District of Oregon, and Scott Erik Asphaug, Assistant United States Attorney, hereby submits the following sentencing memorandum for the Court's review.

**Government's Sentencing Memorandum**                                                                                                   **Page 1**

I.      FACTUAL BACKGROUND

The Presentence Investigation Report ("PSR") at paragraphs 11-23a accurately summarizes the defendant's offense conduct in this case. In 2007, Max Lani sought venture capital for his start-up company, iCommunication Dynamics. He found the defendant and her business, Grand Capital Financial, through her internet website that advertised the business as a real estate investment trust and financial lender, and he approached her for her assistance in finding venture capital. Wang promised Lani that she could secure up to $200,000,000 for Lani's business (well more than he needed or asked for), but told him that he first had to deposit $2,000,000 into her account for a period of 30 days in order to prove to the potential financiers that the business was operational and solvent.

Over the following few months, Lani reached out to potential lenders and eventually Rick Dillon agreed to provide a short-term loan of $2,000,000 to Lani so that Lani could pursue additional venture capital through Wang. Lani and Wang thereafter entered into a contract that provided that Wang would return the $2,000,000 deposit to Lani if she could not secure the promised funding within 30 days. Dillon's funds were then wired from Oregon into Lani's account in Washington, and thereafter wired to Wang in California.

Almost as soon as the money hit Wang's account, she began to spend it. She paid off two personal mortgage loans, purchased a residence in Texas, as well as buying two vehicles and paying numerous personal expenses. There is no evidence that Wang made any effort to secure the promised funding. When the 30 day window ended and no venture capital secured, Lani asked for his money back consistent with the contract. Wang repeatedly lied, stating that funding was still being worked out, that she still had all the money, and would return it if she

**Government's Sentencing Memorandum**                                                                 **Page 2**

couldn't secure the funding in the short term. No venture funding ever materialized. All subsequent efforts to recover the money have failed.

In short, defendant brazenly executed this confidence scheme that has resulted in a devastating loss to the victims of $2,000,000. Despite efforts by the government, and the victims through a civil lawsuit and a bankruptcy proceedings, to identify and trace the whereabouts of the stolen money, it appears the defendant has simply squandered or hidden the funds leaving the victims without any recourse for compensation.

## II.   GUIDELINE CALCULATION

The government agrees with the U.S. Probation Office's calculation of the advisory guideline range in this case. Defendant's base offense level under USSG § 2B1.1 is 7. An additional 16 points are added for losses in excess of $1,000,000 pursuant to USSG §2B1.1(b)(1)(I). Defendant is entitled to a three-level reduction for acceptance of responsibility.

### A.   Abuse of Position of Trust

Defendant should receive a two-level role enhancement for abuse of a position of trust as the facts support that the defendant abused her position of private trust. In *United States v. Hill,* 915 F.2d. 502 (9th Cir. 1990), the Court identified two indicia of a position of trust. The first is the inability of the victim to objectively and expediently determine the defendant's honesty and the second is the ease with which the defendant's activities can be observed. *Id.* at 506.

Here, the victims provided the defendant money based on her promise to use her purported connections to find venture capital and to preserve their funds until she could raise the venture capital. The victims were without the ability to monitor her ability or efforts to pursue the venture capital or her personal use of the money once it was deposited into her account.

They were forced to rely on her promise to find them funding or to return the funds if she failed to raise the venture capital. The defendant blatantly abused that trust by immediately embarking on a spending spree, then lying repeatedly to the victims when they asked for their money back. The defendant's actions fall squarely within the conduct outlined in *Hill* and USSG § 3B1.3.

Based on all of the above, the defendant's total offense level is 22. Defendant is in Criminal History Category I. In Criminal History Category I, Offense Level 22 yields an advisory guideline range of 41 to 51 months.

### III.   SENTENCING RECOMMENDATION AND CONCLUSION

The sentencing guidelines are advisory and one of the statutory factors this Court must consider when imposing a sentence. *See* 18 U.S.C. §3553(a)(4); *United States v. Rita*, 551 U.S. 338, 347-48 (2007). They serve as "the starting point and the initial benchmark" in every sentencing proceeding, *Gall v. United States*, 552 U.S. 38, 49 (2007), and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita*, 551 U.S. at 350. The guidelines serve as a "lodestar" at sentencing, and "cabin" or "anchor" a sentencing court's discretion. *Peugh v. United States*, ___ U.S. ___, 2013 WL 2459523, *9-10 (2013). While advisory, the Supreme Court has observed that, "[c]ommon sense indicates that in general, this system will steer district courts to more within-guidelines sentences." *Id.*

The remaining statutory factors include the defendant's history and characteristics, the nature and seriousness of the offense, the need to provide just punishment and adequate deterrence, the need to promote respect for the law, and the need to protect the public from further crimes committed by the defendant. 18 U.S.C. §§ 3553(a)(1)-(2). They also include "the need to avoid unwarranted sentence disparities among defendants with similar records who have

been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and, where applicable, the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(7). *See also Rita*, 551 U.S. at 347-48 (enumerating the statutory sentencing factors); *Gall*, 552 U.S. at 50, n.6 (same).

In *United States v. Carty*, 520 F.3d 984 (9th Cir. 2008), the Ninth Circuit, sitting *en banc*, summarized the procedures a sentencing court must follow. The court must first correctly determine the applicable guideline range. *Id.* at 991. The court must also allow the parties to "argue for a sentence they believe is appropriate," and must "consider the § 3553(a) factors to decide if they support the sentence suggested by the parties." *Id.* The court may not presume the guidelines are reasonable, and should not give them any more or any less weight than any other factor. *Id.* The court "must make an individualized determination based on the facts," and must explain its choice of sentence "sufficiently to permit meaningful appellate review." *Id.* at 991-92.

Based on the plea negotiations of the parties, the government recommends a sentence at the low end of the advisory guideline range of 41 months imprisonment to be followed by a three-year term of supervised release with the condition that she pay restitution to the listed victims in the amount of $2,000,000, as well as the standard and special conditions as set forth in the Pre-Sentence Report.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

**Government's Sentencing Memorandum**                                                                 **Page 5**

It is anticipated that the defendant will argue that mitigating factors are present and that the Court should impose a sentence less than the advisory guidelines. The government strongly disagrees. Here, a within-guideline sentence is appropriate and justified given the defendant's gross deception and theft from the victims. The defendant knew that her actions were wrong and that she was simply stealing money from the victims that she bamboozled them into giving her under completely false pretenses. She did this crime for one reason-she was greedy. The sentence the government recommends is not excessive and will serve the joint purposes of specific and general deterrence.

Dated this 12th day of June, 2013.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney

*/s/ Scott Erik Asphaug*
SCOTT ERIK ASPHAUG
Assistant United States Attorney